Litigation. And so, let me just get Council's names and make sure we're all set. So, Mr. Friedman, you've got 12 minutes, but you reserved three for rebuttal. So that gives you nine out of the gate. Just give me one second to get settled. Okay, everyone ready? You may proceed. And Your Honors, are we keeping masks? Oh, I should have. I'm sorry. I should have mentioned that. So I think our policy is changing. So speakers may take their masks off if they wish. You're not taking your masks on, at least for the time being. These things are in flux, so who knows where we'll be in a couple of weeks. But you are free to take off your mask. That's quite a relief. Thank you very much. Yeah, that's what everyone says. But no one should feel they need to. It is up to the individual. We're allowed to take them off, too, and occasionally judges will take them off when they're speaking, but nobody has to do anything. Much appreciated. May it please the Court, Edward A. Friedman, Friedman, Kaplan, Seiler, and Edelman for Plaintiff's Appellants, Mark S. Kirshner as the Nine West Litigation Trustee, and Wilmington Savings Fund Society as the Indenture Trustee. The District Court judgments dismissing Plaintiff's fraudulent transfer claims should be reversed. There are two points I would like to highlight this morning. First, Nine West's transfers through the company's payroll system—these are the payments to former holders of restricted stock—should not have been safe harbor. Wells Fargo had no role because a bank was acting as agent for other transfers in connection with the same contract. Second, the District Court also incorrectly safe harbored the DTC transfer. Ruling that Wells Fargo was Nine West's agent for the transfers to shareholders through DTC was contrary to Tribune. In Tribune, this Court explained that agency requires more than accompanying and trusting funds to a bank and agreeing that the bank will transfer those funds. Quote, as this Court explained, quote, in addition, the principal must maintain control over key aspects of the undertaking. What is the difference between the function that Computershare served in Tribune and Wells Fargo here? I would say, Your Honor, that the function of Computershare was largely the same as the function of Wells Fargo. The difference is the relationship and the control of Nine West relative to Wells Fargo compared to the control that Tribune exercised. Are you saying that the control is really in the hands of Jasper Parent and not Nine West? Exactly right, Your Honor. Aren't they really the same entity? No, Your Honor, they're not. Jasper Parent was an entity created by Sycamore, the firm that sponsored the LBO, and Jasper Parent was the parent of the entity that merged with Jones Group. That was Jasper Merger Sub, and this new merged entity was Jones Group, the surviving company renamed Nine West, and the parent of Nine West was Jasper Parent. If we disagree with you on that, is there any other way to distinguish Tribune II other than that point? Is there any other way to distinguish it? I think that is the critical point, Your Honor, and the fact that a parent corporation has or might have an agency relationship with, say, Wells Fargo, does not translate into a subsidiary of the parent having an agency relationship with Wells Fargo. These are separate corporate entities, and under the circumstances of the merger in Nine West with Jasper Merger Sub, it was Jasper Parent that maintained control over Wells Fargo. But isn't that contradicted by the language of the agreement itself? It says Wells Fargo would be first and foremost the agent of Nine West, right? Just for example, the Shulman case decided by this court, which is foundational in the sense that Tribune cites Commercial Union, which relies on Shulman. Shulman explains that a relationship between two entities— I guess your argument is that Nine West has no control over Wells Fargo. Is that right? That is right. I might be wrong. Did Tribune have any more control over computer share? Very, very much so, Your Honor. The difference is black and white. The determinative factor in Tribune was that computer share was not authorized to issue payments to shareholders unless and until Tribune authorized computer share to do so. Nine West, in this case, did not have any comparable authority. And we would submit there's absolutely no basis to believe that Tribune would have come out the way it did if that determinative fact had been absent. Let me push you on that a little bit. I mean, I thought Wells Fargo couldn't tender payment for these transfers unless Nine West provided it with the lists of which book entries and shareholders to pay, right? No, Your Honor. Respectfully, I would say that's not correct. There is a provision in the paying agent agreement that obligates Nine West to provide shareholder lists to Wells Fargo. But there's nothing in the paying agent agreement that says Wells Fargo shall not pay shareholders until it receives those lists. In fact, But Wells Fargo won't know who the shareholders are until it gets the lists. With respect, Your Honor, that's not correct. DTC has the record of the shareholders. The way the paying agent agreement is set up, Jasper Parent funds the amount needed to pay the shareholders. And then as soon as Jasper Parent notifies Wells Fargo, Wells Fargo is then authorized to issue the payment to DTC. The provision that obligates Wells Fargo, I'm sorry, that obligates Nine West to provide shareholder lists is in no way part of the critical act. It's not in terms of either timing or a provision that says you can't pay. And I would submit, Judge Chin, in response to your question, which I appreciate, to the extent that the other side is saying, well, as a matter of fact, Wells Fargo couldn't pay the shareholders until it received the list. That is speculation about the facts, not appropriate on a motion to dismiss addressing the pleadings, and contrary to the discovery record. We've had document discovery in this case. It wasn't stated during the motion to dismiss. Well, maybe I don't know how it works, but how can, I mean, can DTC on its own just start paying people? Don't they need something to trigger the payment? Yes. DTC. So what triggers it if it's not from Nine West? It's not from Nine West. What is it, then, if it's not Nine West, what is it that triggers the payment? The trigger is a payment that Jasper Parent authorizes Wells Fargo to send to DTC to be discouraged. So the trigger is from Jasper. That is correct, Your Honor. Well, I mean, the agreement sort of sets up a mechanism, but the agreement is effectuated by Nine West, and Nine West reserves the ability to take back some of the authority that it's delegated to others, right? Nine West in no way, Your Honor, reserves authority, reserves the right to take back that authority. The way the agreement is set up, Jasper Parent authorizes Wells Fargo to pay DTC. That happens within 24 hours of Jasper Parent depositing. Irregularities, for example. There's a provision in the agreement that says Nine West gets to decide whether to waive those irregularities and what to do about them, right? Your Honor, that, yes, that relates to the certificated shares and the letters of transmittal. No, but these are all just examples of control, and I guess that's, I mean, I don't think it requires that much. I mean, we've said, other courts in this district certainly have said that, you know, it's not essential that the principal actually exercise these things as long as they have the ultimate authority, right? Well, yes, Your Honor, but the control must be control over key aspects of the undertaking. That is why, for example, in the Shulman case, there was an agreement whereby Shulman was an agent for Pan Am and other carriers. And the issue in that case involved funds that Shulman had collected from shippers in respect of airfare owed to Pan Am. And Pan Am said, that's our money. Shulman was in bankruptcy. Continental House— I don't want to get too deep in the weeds of other cases. There's enough weeds in this one, God knows. Right. But, I mean, the point is Nine West has the ability to terminate this agreement at any time, right? No, Your Honor, absolutely not. Jasper Parent has the ability to terminate the agreement at any time before the effective time. Nine West can only terminate the agreement on 30 days' notice. The DTC payment will have been made already. That was required to be made under the merger agreement and under the paying agent agreement basically immediately. Nine West had no ability to stop that and no right to stop it. It was all in the hands and in the control of Jasper Parent. All right. Other questions for Mr. Friedman? Well, you reserved three minutes for rebuttal. So we'll now hear from—let's see how we're going to split this up. Mr. Wiener for nine minutes and Mr. Sharpe for— That's correct, Your Honor. Okay. All right, Mr. Wiener. The floor is yours. Good morning. May it please the Court. Greg Wiener from Ropes & Gray. We're a liaison counsel to the public shareholder and appellees. This Court's tribune decisions are dispositive of appellant's claims against the public shareholders. Appellants went to great lengths to try to litigate this case outside of this circuit, and now they attempt to create distinctions between the tribune case and the facts here to try and evade that decision. But the application of tribune here is clear and unmistakable. Now, the agency issue, which, of course, is the key issue, I think, starting with tribune, the Court, as the appellants acknowledged in their opening brief, interpreted the term agent broadly. And in tribune two, the Court found that it was plain that ComputerShare acted as the agent for tribune. And in tribune three, this Court summarized the issue as tribune entered into an agreement with ComputerShare, whereby ComputerShare was hired to be a steward of tribune's money and its shareholder's stock. It was clearly acting on behalf of tribune, which is enough to satisfy Section 546E. There is no meaningful difference between- What about the control issue? Tribune controlled ComputerShare, and the argument is that Nine West does not control Wells Fargo in the same sense. Yes. So Nine West controlled Wells Fargo throughout the arrangement, from the very inception of the agency to the very end through termination and return of the money to Nine West. The fact that Jasper Parent had a role doesn't diminish the significant control that Nine West had over Wells Fargo. And again, it started in the most fundamental way, as Judge Sullivan pointed out, the list that were to be provided, which identified the shareholders, the number of shares, and the shares to be excluded from payment. That, we submit, is the functional equivalent of what the court in Tribune 2 found was sufficient to create an agency where tribune would notify the ComputerShare that shares had been tendered- Did you know that DTC had the information, but DTC would not have known who to exclude without the lists from Nine West? Correct. DTC has its own information, but the agreement provides, the paying agent agreement provides, consistent with the merger, that there are shares to be excluded. Shares owned by the acquirer, some restricted shares that were given to employees, and- How many shares are excluded, ballpark? Is it a small amount, large amount? Is it substantial? It's a substantial amount. I think it's around 78 million, but it's something in that range. So there's significant control by Nine West over Wells Fargo. What about the fact that even if they have this agency with respect to some transactions, for example, the payroll transfers, they have no involvement in those. So if there is a transaction-by-transaction approach, you couldn't possibly argue that there was any agency with respect to those transactions. Well, our clients, the public shareholders, did not receive any payroll transactions. They were all paid through Wells Fargo. I'll leave it for Mr. Scharf to address that issue. And the control that was provided to Nine West over Wells Fargo, as I say, is multi-pronged, and throughout the agreement from the very start to the termination- Give me the top three. What sections and what powers? Sure. So Section 1.1 and 1.3, which are the lists of who to pay and how much and who to exclude, which explicitly says that it should identify the share amounts of book entry shares receiving payments and the location of any book entry shares to be excluded. That's a key provision. Section 4.7 provides that- if so instructed by the surviving corporation. Section 2.3 says Wells Fargo could only waive irregularities in letters of transmittal after review of the irregularity with Nine West and its approval in writing. Section 2.4 provides that- Can you just tell us about 2.4? Yes, sorry about that. 4.4 is about interim instructions. Right. It's a vague term, but nonetheless contemplated that there might be need for interim instructions, and these are the folks who get to give them. And those are Nine West officers giving those instructions, not Jasper Parent. And then 4.7, where it says that- I'm sorry, 4.8. Sorry, I confused that. 4.8, which says if there's an inconsistency between the merger agreement or the letter of transmittal on one hand and the paying agent agreement on the other, the merger agreement would control, but the surviving corporation was the one to give notice to Wells Fargo of that inconsistency. So those are all examples of repeated control and ability to control by Nine West, not by Jasper Parent. On a different note, Judge Rakoff held that adopted the contract by contract interpretation. If we were to disagree with that, would that matter? If we were to conclude that- Not to you. Not to you, Edward. It wouldn't matter to the public shareholders. All of our payments were made through Wells Fargo. All of our payments were made pursuant to the paying agent agreement, which designated Wells Fargo as the agent of Nine West, not as the agent of Jasper Parent. And all of those payments were under the rubric of that agreement. So that would not affect our analysis. And the only other issue that's been raised, of course, is the question of whether the payments were made in connection with the securities contract. In fact, I think this court in Tribune and in the Madoff case made it clear that term is read capaciously. And in Tribune, the court said it had no trouble concluding that all of the payments at issue were in connection with a securities contract. There's no possible reason to have a different result here. And the only thing that's been asserted by my friends on the other side is that the shares were canceled, not exchanged for money. But that was the very situation in Tribune. They raised that in the briefing in Tribune 3, and the court reached the very same results. Unless there are any questions, I will pass it to Mr. Scharf. All right. Thank you. Thank you very much. We'll hear from Mr. Scharf for three minutes. So you're going to talk about contract by contract as opposed to transaction by transaction, right? Of course I am, Judge. And that is not only consistent with the Supreme Court decision in Merritt. It's most importantly consistent with the very pleading that plaintiff brought here. And they talk about this in their complaint that's at paragraph 131 and 136, that the shareholder transfers were part of a single integrated transaction. And then all they do after that is run away from it and say, no, we should segregate out and do something different as it relates to the agency. First of all, Merritt in footnote 2 specifically carved out this question, right? Yes. And your reading of this 101-22a is completely inconsistent with the analysis in Merritt of what they were trying to avoid, which is a bank that's operating as a mere conduit, somehow all the transactions then being exempt. Isn't what you're arguing completely inconsistent with the theme of Merritt? It's actually not. Because first and most importantly, what we are saying is that Wells Fargo was actually an important agent as it related to the individual shareholders from two perspectives. Number one, they were the agent for Nine West to cancel our shares. The cancellation of the shares pursuant to the instruction of Nine West, giving them the shareholder list, who was included and who was excluded, was an agency function that Nine West gave that related specifically to the individual shareholders. And the transaction wasn't complete until that occurred. So even if one did it on a transaction-by-transaction basis as opposed to a contract basis, and we looked away from the fact that if they are an agent at the time of the transfer, that somehow that doesn't complete the agency. The payroll aspect of it does not remove away the fact that Wells Fargo was an agent specifically for the individual shareholders as it related to the cancellation of their restricted shares. And the transaction couldn't go forward without those actions and the agencies that were created by Nine West to control the actions of Wells Fargo. Doesn't that read to the absurd result that all debtors can simply employ a bank at some stage of a transaction and have the entire transaction be exempt? The Solicitor General argues under this interpretation you're never going to be able to have an exempt fraudulent conveyance claim. What's your response to that? I think that's an overstatement. How would it happen? Banks can always be involved at the level that you're talking about, right? However, the level that we're talking about where a bank has the important functions of agency that have already been acknowledged, there can be a bank, obviously, that is just- You're arguing even in the payroll transfer. In the payroll transfer situation, you're arguing that should be exempt as well, right? We're arguing, we're not arguing that the payroll, that ADP is an agent because ADP was the one that made the payroll- Contract-by-contract approach, everything would be exempt. If this court adopted a contract approach, there could be circumstances, but certainly more would be exempt than otherwise. But I think my very point is you don't need to arrive at a contract-by-contract result in order for the individual shareholders to have established a requisite agency on the grounds that, number one, there's been an acknowledgment by Nine West that this was an integrated transaction, and the agency thus is created on an integrated basis. But more importantly, Wells Fargo played a critical element as it related to our shares, and it's not just the transfer of money. You have a quid pro quo here, and while the transfer of money is coming through a payroll, the second part of the transaction, without which it cannot be completed, is incumbent on Wells Fargo canceling those shares. Because if not, our clients got money, and they still have their shares, and that was not the transaction. The transaction was they would have their shares canceled. It is inherent in this transaction that the shares get canceled in exchange for the money, and that is exactly what Tribune says is exempt. That is the plain meaning of the safe harbor provision. This transaction shouldn't be viewed through the prism that somehow there is a party here, namely the individual shareholders, who get carved out when the entirety of the transaction is exempt because of the integral role. I see my time has expired, and I've gone beyond. You can continue. I mean, I think there may be some more questions coming. Sure. So a customer of a bank is a financial institution if its bank is an agent in connection with the securities contract because that's the plain meaning, regardless of whether the specific transfers pursuant to the securities contract are actually processed by the bank. Here we have a situation where our clients, the individual shareholders, required Nine West to designate who and who did not receive a cancellation of shares, who and who did not receive a payment, and whose shares resulted in the effectuation of the transaction being consummated. Without Wells Fargo, the bank, its customer, Nine West could not have effectuated its transaction. It was absolutely core whether you do it on a transaction or on the global contract basis. You said that what I was suggesting to you, what the result would be, is an overstatement, but the more I listen to you, I can't possibly think of a transaction, an LBO transaction, that would not be exempt. Give me an example of where there would be a non-exempt transaction in these types of situations. I'm struggling to find why that's an overstatement. So I think the short answer to the question is if it were a mere conduit, but that's not the situation here. If there were no active roles, there were no active roles. Under your definition, what's an active role or non-active role, everything would be active under your definition, and therefore everything would be exempt. I can't think of a situation that qualifies what you're calling a mere conduit. Maybe you can give me an example, but I can't think of one. Well, I think if Wells Fargo, for instance, in our situation, if we were to have removed the activity that Wells Fargo had, and the only thing that Wells Fargo, namely the cancellation of the shares, that the cancellation of the shares was extrinsic to the role of the agency that was delegated to Wells Fargo, and Wells Fargo simply had this overall designation that they are an agent for the transaction, but they had no touching in connection with an effectuation of an essential element. Does that ever happen? Does that ever happen? It can happen, because Wells Fargo did not have to be the designee for the cancellation of the shares. It could have happened somewhere outside of Wells Fargo. Wells Fargo became a functionary, an important functionary for a core and fundamental element of what was the quid pro quo. People are going to assume it could happen. It will never happen, because people will always structure it this way and get the benefit of the exemption, right? But that's going to be a negotiated term. If people are going to want to get the exemption, it's going to depend on the benefit of the bargain of how the contract got structured. Here it got structured in a way that is absolutely exempt. There could be a contract where Wells Fargo, when there are payments being made pursuant to a payroll payment, doesn't have anything to do with the cancellation of the shares. The individual shareholders simply could have been shareholders unlike the public shareholders who got money through Wells Fargo, that the DSTC was involved in the cancellation of the shares, that those shares were canceled outside of the rubric and the agency that was delegated to Wells Fargo. The parties negotiated that Wells Fargo was going to have a master agency role here, and having that master agency role. Would you agree that there's nothing in Tribune 2 that would require a contract-by-contract approach? There's nothing in the language of Tribune 2 that requires that. Would you agree with that? I would agree with that, but I would also say there's nothing in Tribune that says that we should be parsing it and doing it on a transaction-by-transaction basis. Your argument is that merit suggests you're not supposed to be parsing it, that merit is about avoiding these sort of intermediary in stages kind of transactions. It is. You should be looking at the overarching transaction, which is A to D, not B, C, and the ones in between. That is correct, Justice Sullivan. Not yet, not yet. It's just a matter of time, people say. That is absolutely correct. That is our position, and that's why we believe the parsing that has gone on in terms of carving us out as this little segregated piece runs counter to what merit is saying, appreciating, Judge Bianco, what you were saying. If the panel has nothing further, I don't have anything further to ask. Okay. Well, you've got your money's worth, anyway. Thank you. All right. We'll now hear Mr. Friedman for three minutes of rebuttal. Thank you, Your Honor. Just a few points. So one is there were questions about the shares at DTC that were excluded, and there was a mention of $78 million. The $78 million represents the restricted stock that is not at DTC. That's restricted stock held by employees at Nine West, and they're paid through payroll. That has absolutely nothing to do with DTC. In response to Judge Bianco's question about the role of Wells Fargo, we heard counsel say that with respect to that restricted stock, Wells Fargo had the role of canceling the stock. That is purely ministerial. All the stock is automatically canceled by operation of law under the merger agreement. The fact that a bank or a transfer agent stamps canceled on a certificate doesn't amount to anything, and it certainly is not evidence of Nine West controlling Wells Fargo as a paying agent. That's what the issue is. And what I would come back to, Your Honors, in that regard, is Tribune was crystal clear in saying that Tribune had control because the agreement provided that ComputerShare could not pay the shareholders until Tribune green-lighted ComputerShare doing so. Wells Fargo—sorry, Nine West did not have that authority. We've had a very interesting discussion about, well, could Wells Fargo pay if the shareholder lists were not provided first? That is really the realm of facts and speculation. That is not reading the agreement, as the Court did in Tribune, and concluding, here's a provision that vests control over the payment process in Tribune. That provision that was determinative in Tribune is not present here. I'd also like to say, with respect to the securities contract issue, that, of course, Tribune made the decision. It was a securities contract, but the issue presented in Tribune was different from the issue before, Your Honors. The issue in Tribune was, is a redemption of shares within purchase or sale of shares? And the Tribune Court ruled redemption is a purchase, therefore, securities contract. The point here, Your Honors, which has not been decided by Tribune or any other court in this circuit, is where a merger agreement, as an incidental aspect, provides for the cancellation of shares, in contrast to the Code's definition of securities contract, in which the securities are central to the agreement. Here, the shares are canceled in the course of the merger. The shares are not purchased. They don't continue to exist. So there's a new argument here, and it's a basis for deciding that this merger agreement is not a securities contract. And finally, I would emphasize, because this applies to both the restricted shares paid through payroll, and it applies to the shareholders paid through DTC, merit, as Judge Bianco was suggesting, is very clear that for purposes of determining the application of 546E, it is necessary to look at the transfer. In fact, merit says the only relevant transfer is the transfer sought to be avoided. So if we're looking at transfers to DTC, whether Wells Fargo is acting as an agent for those transfers cannot, with respect, cannot be answered by saying, well, look what happens when there's a letter of transmittal. And if there's an irregularity, Nine West has some control over that. And last point, Your Honors, there was a reference to Section 4.4 of the Paying Agent Agreement, which provides that. That was Mr. Weiner's point. Yes, exactly. Well, it's important to look at what 4.4 says. 4.4 is Nine West providing its authorization to people who are authorized to act on its behalf. That provision does not trump other operative provisions in the Paying Agent Agreement that best control over certain matters in JASPER Parent. And maybe one key illustration of that is to contrast 4.4 with Section C, which relates to fund transfers, where JASPER Parent designates the people authorized with respect to fund transfers. Because that's part of JASPER Parent's responsibility, and Nine West does not have that control. That is the control that was determinative in Tribune. All right. Why don't we end it there? Thank you very much, all of you. We will reserve decision.